## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JANICE COTTO-COLON | CIVIL NO. |
| **Plaintiff** | |
| v. | PLAINTIFF REQUESTS TRIAL BY JURY |
| LOUIS DEJOY POSTMASTER GENERAL UNITED STATES POSTAL SERVICE | |
| **Defendant** | |

## COMPLAINT

Here comes the Plaintiff, Janice Cotto-Colon, through her legal representation and very respectfully alleges and requests:

### I. PARTIES

1.     Plaintiff Janice Cotto-Colon is of legal age, single, employee of the United States Postal Service with residence and domicile 29 3G4 Terrazas del Toa, Toa Alta PR 00953 Her phone number is 787 225 4821. Her email address is janicemariecottocolon@gmail.com.

2.     Louis Dejoy is the General Postmaster of the United States Postal Service (USPS) which is an independent establishment of the executive branch of the United States, created and governed by the Postal Reorganization Act ("PRA), 39 U.S.C. ss 101-5605.

### II. JURISDICTION AND VENUE

3.     This is a civil action brought pursuant to Title VII of the Civil Rights of 1964, sec; as Amended 42 USC 2000(e) et seq.; and the Postal Service Act- 39USC 101 et seq.

4.      Plaintiff lives within the jurisdiction of the Commonwealth of Puerto Rico and because the unlawful employment practices and violations complained off occurred within the District of Puerto Rico, proper venue is the United States District Court of Puerto Rico.

## III. PROCEDURAL FACTS OF THE CASE:

5.      At all times relevant to the facts of this complaint, the plaintiff was employed as a full-time employee of the USPS as a Mail Handler. Her job's venue was the DMDU Facility Post Office in Catano Puerto Rico.

6.      As Mail Handler 4 level, plaintiff job description was mail dispatcher.

7.      At some of the relevant times related to the facts of this complaint, Noel Torres (Torres) and Kris Rodríguez (Rodríguez) acted as Supervisor of Distributions Operation of the USPS, (referred hereinafter as SDO), either as Acting SDO or Designated (SDO).

8.      So, as SDO's, both Torres and Rodríguez were first line supervisors of plaintiff.

9.      Before being under the supervision of SDO's Torres and Rodríguez, plaintiff worked under the supervision of Delia Mendez.

10.      Plaintiff never had a labor problem with this supervisor for a period of time of two years approximately. years.

11.      Notwithstanding, when Torres became SDO supervisor of the plaintiff on 2020, the labor situation of plaintiff completely changed, leading plaintiff to file for EEO remedies for the following events, to wit:

- On February 13, 2022, plaintiff requested Sick Leave for medical reason. At the time of such request, plaintiff had already been approved by the FMLA of 1900 hours FMLA benefits due to her medical disability condition for chronic asthma. The effect of this benefit was to protect plaintiff for illness absences so she can not

be discipline for such absences. Nevertheless, supervisor Torres changed the request to Leave Without Pay (LWOP) in violation of plaintiff's Leave Medical Leave Act (FMLA) rights. The effect of this change is that under the sick leave, plaintiff is entitled to collect her salary for the days under the sick leave benefit. Notwithstanding, under the LWOP, plaintiff will lose her salary for that particular period.

- On February 22, 2022, plaintiff was forced to work alone on a place known as the platform, in violation of applicable safety and security standards of the employer that prohibits any employee working alone in the platform. The platform is the place where the mail is placed into the trucks to be dispatched to the different mail stations.

- On March 1, 2022, Torres) texted plaintiff on her personal phone to entertain and discuss work related issue regarding early overtime After discussing said work related issues, Torres discussed disciplinary measurements to be applied to plaintiff. These actions by Torres were in violations of the employer own Rules and Regulations as prescribed by the Employers Labor Manual (ELM).

- On March 2, 2022, plaintiff requested annual leave (vacations) due to medical disability. Nevertheless, Torres charged plaintiff absence to sick leave instead annual leave, in violation of plaintiff' benefits under the FMLA's dispositions. While charging plaintiff with annual leave, the vacations period of the plaintiff was reduced.the adverse employment action this action represented.

- On March 21, 2022, Torres approached plaintiff in the lobby and began a verbal discussion about disciplinary measurements to be taken again plaintiff. This violation of the ELM occurred in front of coworker Terence Bland, a male employee.

- On March 24, 2022, Torres moved plaintiff from her platform bid assignment without just cause even though she had seniority over other employees that were supposed to moved from their platform assignment.

- On March 27, 2022, and March 31, 2022, management, Torres assigned a male coworker to a higher-level assignment when she should have been assigned to such higher level depriving plaintiff from earning a higher compensation.

- On April 3, 2022, supervisor Rodriguez gave plaintiff a pre disciplinary interview for failure to follow instructions with full knowledge that she had not failed to follow instructions.

- On April 15, 2022, Torres yelled at plaintiff for being too slow and told her to move from where she was working, all in violation of her FMLA benefits.

12.     So, on April 20, 2022, almost 5 years after starting to perform as USPS employee, plaintiff requested, for the first time in her life, an EEO pre-complaint counseling under the EEO process, affirming that she was subjected of sex and physical disability discrimination as well as hostile work environment and disparate treatment for the discriminatory actions taken against her by Torres and Rodriguez

13.     Supervisors Torres and Rodríguez were notified of the precomplaint counseling process.

14.     No agreement was reached with the USPS in the precomplaint process.

15.     Since no agreement was reached with defendant, on May 18, 2022, plaintiff filed the Formal Complaint EEO number 1C-331-0295-22

16.     Torres and Rodriguez were notified of the Formal EEO complaint filed by plaintiff

17.     On July 30, 2022, EEO -331-0295-22 was amended for the first time to include a retaliation claim as well as additional discrimination claims based on sex and disability when:

- On May 22, 2022, just four days after the filling of the formal EEO complaint, management, again, Torres moved plaintiff from her platform bid assignment without just cause.
- On July 11. 2022, Plaintiff was instructed to take lunch at 7 am on the platform, despite there being coworkers present that were juniors to her.

- On July 11, 2022, a male coworker named Adalberto Santiago, a male employee yelled at plaintiff and after even though plaintiff reported to Union the Zero

4

tolerance policy's violation but management failed to take appropriate action against the male employee.

- On July 12, 2022, Torres told Acting Supervisor Ares to give Plaintiff instructions to move to another work assignment in order to harass her.

18.    On August 7, 2022, Plaintiff's EEO 1C was amended to include a second claim of retaliation as well a third claim of discrimination based on sex and physical disability when:

- On July 23 and August 1, 2022, management gave plaintiff instructions, through the intercom using plaintiff full names which made her feel disrespected.

19.    On September 3, 2022, plaintiff's EEO was amended to include a third retaliation claim as well as a fourth claim of discrimination based on sex and physical disability when:

- On August 29, 2022, the plaintiff's supervisor gave her an unsafe order when he instructed Complainant to unload an amazon van using a forklift.

- On August 29, 2022, the plaintiff became aware that someone had used pictures of the plaintiff and coworker taken at work to set up a Facebook page and upon information and belief her supervisor was involved in the action.

20.    On October 17, 2022, EEO was amendment for the fourth time to include a third claim of retaliation and a fourth claim discrimination based on sex and physical disability when:

- On October 6, 2022, the plaintiff was given a predisciplinary interview (PDI).

- On October 7, 2022, a coworker yelled at the plaintiff and harassed her and when the plaintiff reported the violation of the    Zero Tolerance Policy to violence regulation to management, they failed to take appropriate action.

21.    On November 9, 2022, EEO was amendment for the fifth time to include a fourth claim of retaliation and fifth claim of discrimination based on sex, physical disability, and when:

- In October 2022, an adverse employment action was done against the plaintiff when a letter of warning was issued to her by Supervisor Rodriguez.

- On October 29, a male made a death threat to plaintiff and another coworker, and coworker named Jose Tolentino and Torres failed to take appropriate action when notified of the incident in violation of the No Tolerance Policy of the employer.

- On October 31, 2022, supervisor distribution operation Krys Rodriguez harassed the complainant by watching and staring to the plaintiff constantly, including on her break.

- About November 3, 2022, the plaintiff became aware through union representative Ildefonso Rivera that Torres wanted the plaintiff to drop her EEO complaint or they would discipline one of her coworkers.

22.     As part of the administrative proceedings, on September 27, 2023, the agency filed a Motion Requesting a Decision Without Hearing (equivalent to a Motion for Summary Judgment).

23.      The plaintiff opposed the motion.

24.     On November 27, 2023, the Administrative Judge granted, erroneously, the Motion and recommended to the agency to dismiss plaintiff's claim.

25.     On December 5, 2023, the agency entered a Notice of Final Action in which it implemented the decision rendered by the Administrative Judge dismissing the EEO.

26.     In said Notice of Final Action, the agency advised the plaintiff of her right to file a civil action within the next 90 days after the final action.

27.     That term of 90 days is due on March 4, 2024.

28.     Therefore, plaintiff had exhausted her rights under the EEO's procedures for this case. and had filed this civil action within the term of 90 days after the entry of USPS' Final Action.

IV.     MATERIAL FACTS:

6

29.     Complainant, Janice Cotto Colon, is a Mail Handler, working at the DMDU Cataño Annex in Cataño, Puerto Rico. She is a female. She began working as an employee of the USPS in 2017.

30.     At all times relevant to the facts of this complaint, plaintiff was entitled to the benefits of the Family Medical Leave Act (FMLA) as approved uninterruptedly since 2020 for chronic asthma condition.

31.     At all relevant times to the facts of this complaint, Noel Torres (Torres) was the Acting Manager of the Distribution Operations of the DMDU Catano Annex in Catano, Puerto Rico (also known as Torres).

32.     Torres is a male. Plaintiff had been working together with SDO Torres since May 2020.

33.     When Torres engaged in retaliatory and discriminatory actions against the plaintiff, he had knowledge of plaintiff, protected activity.

34.     On April 20, 2022, Plaintiff filed an EEO pre-complaint action against Torres.

35.     As part of the administrative process initiated by plaintiff, Torres was interviewed by the EEO's investigator in which he acknowledged the protected activity performed by plaintiff.

36.     Since no agreement was reached by the parties to resolve the pre-complaint, the agency issued on May 3, 2022, a Notice of Right to File.

37.     Additionally, Torres was aware of the Plaintiff's medical limitations, prior to his retaliatory and discriminatory actions against the plaintiff.

38.     Plaintiff had Family Medical Leave Act (FMLA) benefits  approved since 2020.

39.     In May 2020, Mr. Torres started to act as the complainant's supervisor. On that same month, plaintiff requested Torres the approval of Leave Without Pay due to her Covid's

vaccination. She informed Torres that she had available FMLA's time to be applied to her FMLA' benefits.

40.     At all times pertinent to the facts alleged in the complaint. Krys Rodriguez (Rodriguez) was also Supervisor of Distribution Operations. (SDO). He identifies himself as a Transgender Male. He has been plaintiff' supervisor since September 21, 2022.

41.     On the other hand, Mr. Rodriguez became aware of activities, prior activities, prior to his retaliatory and discriminatory actions against the plaintiff. He was also aware of the plaintiff's medical limitations prior to the discriminatory and retaliatory actions taken against the plaintiff, as admitted by him in the administrative process.

42.     At all-time relevant to this complaint, Julio Medina was the Acting Supervisor Distribution Operations at DMDU Catano Annex. He became aware of Complainant's EEO activity when he received an email from the investigator.

43.     At the time of this complaint, Yamaris Ortiz was a US Postal Inspector.

44.     Since January 2, 2021, SDO Torres had been questioning plaintiff about her medical reasons in which she had based her request for Sick Leave. On, at least, six times before February 13, 2022, Torres without any basis, changed plaintiff's request for sick leave to leave without pay. Evidently the change from sick leave pay to LWOP represents an adverse employment action.

45.     On February 13, 2022, the complainant requested, once more, sick leave due to a medical limitation related to her FMLA benefits.

46.     On February 14, 2022, Torres, without any basis, changed it, again, to LWOP.

47.     Plaintiff immediately voiced out her protest to Torres for said adverse employment action, to no avail.

48.     On February 19, 2022, another supervisor, Mr. Barreto reviewed the issue and corrected it, approving plaintiff's annual leave request, while disallowing Torres' LWOP.

49.     Plaintiff was discriminated by Torres for her sex. Fredis Maldonado, a male employee, had testified that Torres had never changed his sick leave status to LWOP.

50.     The plaintiff was also discriminated against by Torres due to her disability because she had FMLA's protection and was entitled to sick leave, but Torres did not respect plaintiff FMLA's rights and unilaterally changed her request to LWOP.

51.     Such actions represent an adverse employment action because it represented a loss of salary for the plaintiff of 8 hours.

52.     On February 25, 2022, management moved all Mail Handlers Assistants (MHAS) to another USPS plant. Because of this, there were not enough employees at the DMDU- Cataño. to work at the platform. One of the employees that was not moved from Cataño plant to another plant was the plaintiff.

53.     On February 25, 2022, Torres gave instructions to supervisor Padilla to assign the plaintiff to work alone on the platform.

54.     Plaintiff objected to being left alone on the platform because it was a violation of the ELM as well as for her chronic asthma condition, she needed other people working with her.to no avail, so she was obliged to work alone on the platform.

55.     After work, the plaintiff filed a 1767 form against management alleging safety hazards. Afterwards, she filed a grievance against management and, eventually settlement was reached in which management agreed not to leave complainant work alone at the platform.

56.     Torres discriminated against plaintiff because she is a woman. Fellow male employees, such as Fredis Maldonado, were also asked, on several instances, to work alone on the platform but when it was objected by the male employee, Torres did not let Maldonado work alone.

57.     Torres also discriminated against the plaintiff because of her medical limitations because he was fully aware that due to her medical condition, allowing her to work alone on the platform would affect the complainant's health. As expected, her chronic fatigue condition worsened, and the plaintiff had to spend the rest of the day lying in bed.

58.     On March 1, 2022, at 4:31 pm, Torres texted the plaintiff saying that there was no more early overtime for her. No reason was given for such a discriminatory decision. Plaintiff's tour was from 3:00 am to 11:30 am, so the communication was out of labor hours in violation of ELM.

59.     Plaintiff filed a grievance. Eventually, the grievance was settled by the parties agreeing that management will abide by the Cell- Phone Policy which does not allow management to have, with some exceptions, communications with the employee outside their labor hours.

60.     Torres discriminated against complainant for being a woman when she was treated differently from male employees because Fredis Maldonado, as well as Terence Bland, both male employees, never received unauthorized text messages from Torres.

61.     On March 2, 2022, plaintiff, again, requested sick leave based on her Family Medical Leave (FMLA), benefits but Torres, on March 3, 2022, denied it by changing her request to annual leave.

62.     Torres discriminated against the plaintiff for her disability because plaintiff had the right to request sick leave due to her FLMA's benefits and Torres changed to annual leave, affecting her annual leave status.

63.    On March 21, 2022, Torres verbally reprimanded plaintiff near co-worker Terrance Bland. The plaintiff was in the break mail room enjoying her free time. Torres did, in a very disrespectful way, upsetting plaintiff, which caused her to be physically shaking, affecting her health and affecting her performance work.

64.    The plaintiff filed a grievance, and management, once again, agreed to abide by the Collective Bargaining Agreement, article 16.2 of the CBA agreeing to address any future disciplinary issues in a private manner and not in front of fellow employees.

65.    Torres discriminated against plaintiff for being a woman when she was treated differently from male employees because Fredis Maldonado as well as Terence Bland, male employees, never received reprimand in public from Torres.

66.    On March 27, 2022, Torres assigned a male employee Mr. José Sepulveda  instead to  higher-level assignment instead of plaintiff. Mr. Sepulveda was on a temporary change of schedule and, therefore, he did not have seniority over plaintiff.

67.    Plaintiff filed a grievance that was denied by Torres upon advice from supervisor Rodriguez. Nevertheless, the actions discussed herein are, clearly, in violation of Section 18(b) of the Local Memorandum of Understanding (LMOU). Additionally, the complainant states that Mr. Sepulveda is a close friend of Torres and he was comfortable yelling and using aggressive movements to express himself and he did not get off the tow truck. There was no disciplinary action against male employee Sepulveda for this behavior.

68.    Torres discriminated against complainant for being a woman when he assigned a male employee to a high-level assignment that corresponded to complainant, a woman.

69.     On March 24, 2022, supervisor Rodriguez told plaintiff to get off the truck and go to work in another area. This action was in violation of Article 15 of the CBA. The same situation occurred on May 12, 2022, at 3:00. Plaintiff filed an abusive report against Rodriguez.

70.     Rodriguez discriminated against complainant for being a woman by treating her different than to male employee Bermudez, which also had a platform bid assignment but had a less seniority and was never asked to leave the assignment, instead of complainant. Same occurred with male employee Luis Sambolin.

71.     On March 27, 2022, the plaintiff was authorized by Rodriguez to do overtime but Rodriguez later denied having given such the authorization. Supervisor Rodriguez filed a Pre-Disciplinary Interview (PDI) against plaintiff alleging that overtime was not denied to three male employees.

72.      PDI was downgraded to an Official Discussion.

73.     On April 15, 2022, the plaintiff started her shift at and was assigned by floor supervisor to work as High Level driving an electrical equipment. This was proper because she had high level other the remaining employee Nevertheless, Torres came in and ordered plaintiff to transfer plaintiff to work to the Low-Cost Universal Sorter (LCUS).

74.     The plaintiff objected and went to the Mail Handler Union office, but there was no representative at the time. So, plaintiff had no other objection than to go to work on the LCUS.

75.     While she was working at the LUCS, Torres approached her and began to, aggressively, yell to plaintiff, in front of male coworker Rafael Perea, that plaintiff was working slow.

76.     Rose Arce, a union delegate, approached the plaintiff to ask her if she was all right. The plaintiff said she was very nervous and afraid of Torres.

77.     Torres kept on harassing the plaintiff and staring at her, like saying "go faster". Noel Torres decided to move moved complainant out the LCUS and replaced her with male employee Dan Matos.

78.     The complainant was also discriminated against by Torres because of her disability because if she was slow, it was due to her medical limitations.

79.     Torres also discriminated against complainant because of her sex. Complainant had never seen Torres shouting and being aggressive with a male employer as can be acknowledged by Maldonado and Terence Bland.

80.     On July 11, 2022, plaintiff's lunchtime was at 9 am. Mr. Ares, an acting supervisor, under the supervision of Mr. Torres, approached the plaintiff to give her instructions to change her lunchtime to 7 am. This was one of many other times that Torres had changed the plaintiff's lunch hours.

81.     Plaintiff objected the change of hour, expressing she expressed that she did not agree with the change because it was in violation of a prior agreement between the Union and the USPS by which management was obliged to rotate the lunch hours every day in order to give every coworker the employees the opportunity to take lunch hours at different times.

82.     Tores discriminated against the plaintiff because having knowledge of her medical conditions, they did not rotate the lunch times which lead to trigger her medical condition.

83.     Torres discriminated against complainant for being a woman. All coworkers involved in the situation were male employees.

84.     Also on July 11, 2022, male employee Adalberto Santiago yelled to plaintiff "Sorry Janice, I am going to bid again to the North Platform". Santiago's actions were a violation of the

Zero Tolerance Policy. Plaintiff reported the violation to Torres, but nothing was done by management.

85.     Torres discriminated the complainant for being a woman. All coworkers involved in the situation were male employees.

86.     On July 12, 2022, at 4 am, Mr. Ares assigned plaintiff to work on the north platform floor, in violation of Section 18(b) of the Local Memorandum of Understanding (LMOU). Supervisor Ares, assigned, instead, this high-level activity to two male employees Mr. Sepulveda and Mr. Sambolin. Neither of these two male employees were high level.

87.     Plaintiff complained about the situation through the filing of a grievance and she, once more, prevailed. Management was obliged to pay the plaintiff the difference in compensation for work as high level versus floor.

88.     Management discriminated against plaintiff because of her sex. The employees that were benefited by the decision of management were male employees.

89.     On July 23, 2022, at approximately 5:10 am, the plaintiff was driving the low-cost universal sorter.  During her break time, the plaintiff noticed that management was calling the name of an employee through the intercom. Because it was noisy, the plaintiff was unable to acknowledge the name of the employee. When she was driving the sorter after the break, fellow employee Terrence Bland stopped her and asked if she had heard Mr. Ares calling complainant through the intercom by her full name. The plaintiff told Bland, no.

90.     Shortly after, the plaintiff met with fellow employee Mr. Fredis Maldonado and he told the plaintiff that Mr. Ares was looking for her on the north platform. Mr. Maldonado told Mr. Ares that the plaintiff was working on the LCUS machine.  Instead of looking for the plaintiff

where she was working, Mr. Ares proceeded to call the plaintiff through the intercom by her full name.

91.    On August 1, 2022, the same situation about calling plaintiff name through the intercom, happened again.

92.    Torres and Ares discriminated against plaintiff because of her sex.  In her 5 years of work at the USPS, plaintiff had never heard calling a male employee by his name under the same circumstances.

93.    On August 29, 2022, Torres instructed plaintiff to unload an amazon van using a forklift. The instruction was a violation of the safety measurements of the USPS. Torres did not ask male employees to perform such a safety hazard.

94.    On October 6, 2022, the complainant was given a Pre-Disciplinary Interview by supervisor Rodriguez alleging falsely that plaintiff had altered the time clock. Plaintiff responded that she had reported to management several times before October 6, 2002, about situations pertaining to errors and malfunctioning of the clock machine. The plaintiff affirmed this situation about the malfunctioning of the time clock had also occurred to supervisors and fellow male employees. The plaintiff even told Rodriguez specifically, that on October 3, 2022, she slipped her card during her lunch break period, but it was not reflected in the system. Rodriguez did not pay any attention to plaintiff claims. Eventually, Rodriguez filed a letter of warning against the plaintiff.

95.    On October 7, 2022, male employee Jose Tolentino approached plaintiff and started to yell aggressively with comments like "if you do not want to work, then clock out and go home".

Plaintiff was afraid and intimidated by the attitude of the male employee, so she filed a Safety Form, reporting the violent incident.

96.     Once more, Torres did not take any appropriate action on this matter.

97.     On October 27, 2022, in relation to the PDI discussed above regarding the fraudulent use of the time clock, supervisor Rodríguez issued a Letter a Warning to the plaintiff.

98.     The letter of warning was related to an unfounded and retaliatory allegation made by Rodriguez and Torres for a failure to perform all clocks ring adequately, which was a false and unfounded allegation.

99.     Joey Acevedo (Union representative) approached two times to Noel Torres and Krys Rodriguez to remove this letter of Warning because it was unfounded and false but they blatantly refused.

100.    As expected, the letter of warning was eventually expunged and removed from plaintiff's file because it was unfounded and false. Neither Torres nor Rodriguez were able to provide a scintilla of evidence linking plaintiff to any wrongdoing on the clock's rings.

101.    On October 29, 2022, Fredis Maldonado and complainant were talking with Joey Acevedo (Union representative) Jose Tolentino, who had prior two verbal acts of violence against plaintiff, acknowledged by Torres, was passing by driving an electric pallet jack.

102.    Mr. Tolentino yelled to Joey Acevedo "Cabron, lo que digan de mi, me lo tienes que decir porque yo tambien pago Union" ( Mother fucker, whatever is told about me, you had to tell it to me because I also pay my union dues).

103.    Tolentino approached Fredis Maldonado to keep on saying bad and threating words and inviting Mr. Maldonado outside to fight. Eventually, Mr. Tolentino said to Mr. Maldonado "Tu y tu amiguita cuidensen en la calle". "(you and your belittle female friend be careful on the street).

At the same time, Tolentino, looking at plaintiff, passed the hand through his neck in a form of a decapitate death threat.

104.    Eventually. Mr. Maldonado and the plaintiff went to the Postal Mail Handler Union Office to discuss what happened. Both were talking to Joey Acevedo when Torres knocked on the door. Joey Acevedo tried to start explaining the situation, since he was the first person to be insulted by Mr. Tolentino. In the middle of his explanation, Torres interrupted him and began to talk. Joey Acevedo got agitated and told Torres that he hadn't finished. When Joey Acevedo finished his statement, Torres asked Mr. Maldonado what happened.

105.    Mr. Maldonado explained what had happened and Torres said, "I will take care of it".

106.    Torres didn't ask the plaintiff what happened when clearly Joey Acevedo and Mr. Maldonado mentioned she was involved.

107.    On October 31, 2022, plaintiff was working as regularly when she noticed that supervisor Rodriguez was harassing her that day by following plaintiff at the employee's bathroom when Supervisor Rodriguez had his own bathroom on the office. He usually lighted the cigarette at the back of his supervisor's offices but this day he walked behind the plaintiff toward her car looking and staring at plaintiff.

108.    On Tuesday, November 01, 2022, Mr. Maldonado and the complainant decided to go to the state police station on Cataño and the state agent recommended complainant to request a protection order against Mr. Tolentino because till this day Mr. Tolentino had work in the same plant (DMDU Cataño) and same shift.

109.    For more than a month, Mr. Tolentino worked beside plaintiff on the north platform high level. Torres did nothing to protect the plaintiff.

110.    On December 13, 2022, complainant decided to report this incident to the US Postal Inspection Service office of the United States: Torres was notified of the action. Nothing was done by Torres to protect the plaintiff.

111.    Even when complainant delivered the documents of the protection order to management on November 4, 2022, SD Torres did not remove Mr. Tolentino from DMDU Cataño

112.    Torres discriminated complainant when he discussed the situation solely with the males' employees letting her out of the discussion or solution of the situation. None of the male employees had prior EEO activity before so Torres also discriminated the complainant in retaliation for prior EEO activity. Torres failed to follow the protocols of the USPS and allowed Tolentino to continue working on complainant's shift and my working area without taking any safety measurement to protect her. Torres did not even file disciplinary action against Tolentino, including his termination for making a death threat.

113.    On  November 3, 2022, in a meeting held at the Union offices, Torres mentioned that if plaintiff did not dismiss her EEO against him, he would discipline fellow worker and witness for the plaintiff Fredis Maldonado .

**FIRST CAUSE OF ACTION**

**HARASSMENT-HOSTILE WORK ENVIRONMENT: DISCRIMINATION BY SEX AND DISABILITY**

114.    Harassment of an employee that would not occur but for the employee's race, color, sex, national origin, age, disability, or religion is unlawful if it is sufficiently severe or pervasive. Merito Savings Bank v. Vinson, 477 U.S. 57, 67 (1986); Wibstand v. U.S. Postal Service, EEOC

Appeal No. 01972699 (August 14, 1998), citing Mckinney v. Dole, 765 F.2d 1129, 1138-1139 (D.C. Cir. 1985); Julia L. v. Office of Personnel Management, EEOC Appeal No. 2019000059 (January 7, 2020).

115.    Harassment due to an individual's prior EEO activity is also actionable. Roberts v. Department of Transportation, EEOC Appeal No. 01970729 (September 15, 2000).

116.    To establish a claim of harassment, a complaint must show that: (1) he/she belongs to a statutorily protected class; (2) he/she was subjected to unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment had the purpose or effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. McCleod v. Social Security Administration, EEOC Appeal No. 1963810 (August 5, 1999); Soo C. v. Department of Justice (Federal Bureau of Prisons). EEOC Appeal No. 0120182244 (June 24, 2020).

117.    The Supreme Court of the United States has held that an employer who creates or tolerates a work environment which is permeated with ''discriminatory, intimidation, ridicule, and insult ''that is sufficiently severe or pervasive to alter the terms and conditions of an individual's employment and which creates an abusive work environment is in violation of Title VII. Harris v. Forklift System, Inc., 510 U.S. 17 (1993), citing Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986). The conduct in question is evaluated form the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. Harris, supra. In order to support a finding of a hostile work environment, more than a few isolated incidents of enmity based on race, gender, national origin, religion, etc. must have occurred. There must have been a steady

barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. Snell v. Suffolk County, 782 F.2d 1094 (2nd Cir. 1986).

118.    The Commission has also agreed with the courts and held that in order to establish a case of harassment that constitutes a hostile work environment, the harassment must be ongoing and continuous and that a few isolated incidents will not be sufficient to constitute discriminatory harassment. McGivern v. U.S. Postal Service, EEOC Request No. 05930481 (March 17, 1994) and Vargas v. Department of Justice, EEOC Request No. 05931047 (October 7, 1993). The conduct involved must be viewed in the context of the totality of the circumstances including, among other things, the nature and frequency of the offensive encounters and the time span over which the encounters occurred. Ackerman v. Dept. of Transportation, Appeal No. 0120101242 (February 11, 2011).

119.    The Equal Employment Opportunity Commission has repeatedly held that remarks unaccompanied by a concrete agency action are not a direct or personal deprivation sufficient to render an individual aggrieved, Complainant v. Dept. of the Navy, EEOC Appeal No. 0120150483 (May 7, 2015), citing Phillips v. Dept. of Veteran Affairs, EEOC Appeal No. 05960030 (July 12, 1996); Backo v. U.S. Postal Service, EEOC Request No. 05960227 (June 10, 1996).

120.    There are two rules for employer liability in hostile environment cases: 1) If the hostile environment is created by a supervisor or manager the employer is liable unless, as affirmative defense, the employer can show: a)The employer exercised reasonable care to prevent and promptly correct any harassing behavior; and b) The employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm; and 2) If the hostile environment is created by a coworker, the employer is liable if:

a) the employer knew or should have known of the harassment; and b) failed to take prompt and effective corrective action.

121.     An agency may generally avoid liability by showing that the acts complained of did not occur, that the conduct complained of was not unwelcome, that the alleged harassment was not ''sufficiently severe of pervasive'' to alter the terms or conditions of the complainant's employment or to create a hostile work environment, that immediate and appropriate corrective action was taken as soon as the employer was put on notice, or that there is no basis for imputing liability to the employer under agency principles. Merito Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986).

122.     An employer is subject to vicarious liability for harassment when it is ''created by a supervisor with immediate (or successively higher) authority over the employee. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998). An acting supervisor for the purpose of this test. Rhodes v. U.S. Postal Service, EEOC Appeal No. 01980284 (September 2, 1999).

123.     When harassment does not result in a tangible employment action and a supervisor or co-worker is accused of the harassing conduct, the agency can raise and affirmative defense to liability by demonstrating that it exercised reasonable care to prevent and correct promptly any harassing behavior and that the employee unreasonably failed either to take advantage of any preventive or corrective opportunities provided by the agency or to avoid harm otherwise. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. 775, at 807 (1998); and Enforcement Guidance, supra, Page

124.     The corrective action necessary will depend upon the facts of the case and must be prompt and reasonably calculated to end the harassment. Taylor v. Department of the Air Force, EEOC Request No. 05920194 (July 8, 1992) and Olsen v. Department of Housing and Urban Development, EEOC request No. 05930413 (June 16, 1994). If the actions taken by a supervisor

culminate in a tangible employment action, this affirmative defense is not available. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 808; and Enforcement Guidance, supra, Page 7. If a coworker of the complainant is involved, the agency will be liable if it knew or should have known about the problem and failed to take prompt and effective corrective action. Morace v. Dep't of the Interior, EEOC Appeal No. 01993939 (March 24, 2003), and 29 C.F.R. § 1604.11(d).

125.    The decisions make it clear that the anti-discrimination laws are not a '' general civility code" that guarantees a pleasant working environment. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998); and that the conduct complained of must be so objectively offensive as to alter the terms and conditions of one's employment. Routine work assignments, instructions, and admonishments do not rise to the level of discriminatory harassment. DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000); Wolf v. U.S. Postal Service, EEOC Appeal No. 01961559 (July 23, 1998).

126.    Plaintiff incorporates paragraph 1 to 113 as if literally transcribed.

127.    Harassment of an employee that will not had occurred but for employees/s race, color, sex, national origin, age, disability or religion if on lawful if it is sufficiently sever of pervasive.

128.    Plaintiff belongs to a statutorily protected class; was subjected to unwelcome, verbal and physical conduct involving the protected class; the harassment was based on her statutory protected class and had the purpose or effect of unreasonably interfering with her work performance and creating an intimidating hostile or offensive work environment. There is a basis of imputing liability to an employer.

129.    The conduct complained by the Plaintiff was not welcome and it was sufficiently severe and oppressive to create a hostile work environment.

130.     The harassment pattern suffered by plaintiff was a continuous, frequent and permanent violation, so USPS is responsible for the damages suffered by plaintiff since 2017.

131.     Due to the fact that a tangible action of employee is involved, the agency is strictly liable.

132.     Plaintiff suffered a tangible employment action when she was deprived of income and was subjected toa letter of warning,

133.     USPS discriminated plaintiff because of her sex. Male employees such as Maldonado and Bland were treated differently to plaintiff under the same circumstances. Management did not discipline male employees such as Tolentino a male employee in violation of the Zero tolerance Policy.

134.     USPS discriminated against the plaintiff because of her disability. Plaintiff was entitled to the benefits of the FLMA and management discriminated her by failing to provide such benefits to the plaintiff, causing her to suffer economic damages and physical damages.

135.     Plaintiff suffered damages as a result of the harassment- hostile work environment. including psychiatrist treatment, humiliation mental suffering, lack of sleep, intimidation, and damages to her intimacy.

136.     Damages are estimated in an amount not less than Five Hundred Thousand Dollars ($500,000.00)

SECOND CAUSE OF ACTION: RETALIATION

184.    The averments of paragraph 1 to 136 are fully incorporated in this paragraph as if fully transcribed herein.

185.    To establish a prima facie case based on reprisal, plaintiff must show that: (1) he or she engaged in prior protected activity; (2) the agency official who took the adverse employment action

was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass 1976), aff'd 545 F.2d 222 (1st Cir. 1976); Anastacia D. v. Dept. of Justice, EEOC Appeal No.2019002640 (June 30,2020) citing Whitmire v. Dept. of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000)

186.    Prior activity may be established by participating at any stage of the EEO process or opposing unlawful discriminatory conduct. See, generally, Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. U.S. Postal Service, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24,1986) (representative).

187.    To establish the first element of a prima facie case of retaliation, the plaintiff must show the plaintiff has previously engaged in or participated in some form of protected EEO activity.

188.    The evidence shows that the plaintiff had pursued prior EEO cases. Consequently, the plaintiff has fulfilled the first element of a prima facie case of retaliation.

189.    The second element of the prima facie case of retaliation requires the plaintiff to demonstrate that the management official knew of the complainant's EEO activity at the time he or she acted against the complainant's employment interests.

190.    SDO Torres and Rodriguez admitted during the management investigation of plaintiff's EEO that he had knowledge of plaintiff prior EEO activity.

191.     So, the plaintiff has fulfilled the second element of his prima facie case.

193.    The third element of the prima facie case obliges the plaintiff to show that, after the prior EEO activity was commenced, a subsequent management action adversely affected a term, condition, or privilege of plaintiff's employment.

194.    Plaintiff was adversely affected in terms of conditions of employment as alleged in this complaint.

195.    So, the plaintiff has also fulfilled the third element of his prima facie case

196.   The last element necessary for the establishment of a prima facie case of retaliation is evidence of a causal link between the protected activity and the adverse action or treatment received by the complainant.

197.    The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action.

198.    The time proximity between the exercise of the protected activity and the adverse employment action was very close.

199.    Plaintiff EEO activity was filed originally on April 20, 2022 and amended four times on July 30, 2022, September 3, 2022, October 17, 2022, and November 9, 2022 Plaintiff suffered 12 adverse employment actions between a period of time of  seven months

200.    Accordingly, a causal connection based on temporal proximity can be established in this case meaning that plaintiff has fulfilled the fourth element of the prima facie case.

203.    Moreover, plaintiff and male employees Maldonado and Bland are similarly situated than plaintiff but none had prior EEO activity.

204.    Nevertheless, the two similarly situated employees were treated differently.

205.    The plaintiff suffered retaliation as a result of engaging in the protected activity of filing an EEO claim, and management was aware of the filing of the claim.

206.    The management staff were employed by the USPS; therefore, are considered agents of the USPS.

207.    As agents and employees of the USPS, the liability of the concerned management staff is imputed to the USPS.

208.    Therefore, the USPS and its management staff engaged in an illegal act of retaliation against the plaintiff.


WHEREFORE, it is respectfully requested that judgment be entered against the defendant in a sum in excess of $500,000, plus costs, expenses and a reasonable amount of attorney's fees.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico this 4th of March, 2024


*f/Marcos Valls-Sánchez*
Attorney for the Complainant
PO Box 363641
San Juan PR
00936-3641
(787) 922-8400
marcos.valls@vallslegalfirm.com